# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISON

| | | |
|---|---|---|
| ELENA PIHANA-VILIGRAN, | : | |
| | : | Case No. 6:25-cv-2396 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| TRISTAR PRODUCTS, INC., | : | |
| | : | |
| Defendant. | : | |

## COMPLAINT & DEMAND FOR JURY TRIAL

Plaintiff, by and through her attorneys, **JOHNSON BECKER, PLLC**, upon information and belief, at all times hereinafter mentioned, alleges as follows:

## NATURE OF THE CASE

1. Defendant Tristar Products, Inc. designs, manufactures, markets, imports, distributes and sells a wide-range of consumer products, including the subject "Power Pressure Cooker," which specifically includes the Tristar Pressure Cooker Model Number Y6D-AF-36B (referred to hereafter as "pressure cooker(s)").

2. Defendant Tristar touts that its pressure cookers are designed with several "Built-In Safety Features," which purport to keep the consumer safe while using the pressure cooker. Such safety features include a supposed "lid safety device." The "lid safety device" is intended to prevent the unit from building pressure if the lid is not closed properly, as well as to prevent the lid from opening until all pressure is released.[1]

3. Despite Defendant Tristar's claims of "safety," it designed, manufactured, marketed, imported, distributed and sold, both directly and through third-party retailers, a product

---

[1] Attached hereto and incorporated by reference as Exhibit A is the Power Cooker Pressure Cooker Model No. Y6D-AF-36B Owner's Manual. See e.g. pgs. 12, 14, 19.

that suffers from serious and dangerous defects. Said defects cause significant risk of bodily harm and injury to its consumers.

4. Specifically, said defects manifest themselves when, despite Defendant Tristar's statements and "Safety Features," the lid of the pressure cooker is removable with built-up pressure, heat and steam still inside the unit. When the lid is removed under such circumstances, the pressure trapped within the unit causes the scalding hot contents to be projected from the unit and into the surrounding area, including onto the unsuspecting consumers, their families and other bystanders. The Plaintiff in this case were able to remove the lid while the pressure cooker retained pressure, causing her serious and substantial bodily injuries and damages.

5. Defendant Tristar knew or should have known of these defects but has nevertheless put profit ahead of safety by continuing to sell its pressure cookers to consumers, failing to warn said consumers of the serious risks posed by the defects, and failing to recall the dangerously defective pressure cookers regardless of the risk of significant injuries to Plaintiff and consumers like her.

6. As a direct and proximate result of Defendant Tristar's conduct, the Plaintiff in this case incurred significant and painful bodily injuries, medical expenses, physical pain, mental anguish, and diminished enjoyment of life.

## PLAINTIFF ELENA PIHANA-VILIGRAN

7. Plaintiff **ELENA PIHANA-VILIGRAN,** ("Plaintiff") is a resident, citizen and is domiciled in the city of Omaha, County of Douglas State of Nebraska. Plaintiff therefore is a resident, citizen and is domiciled in the State of Nebraska for purposes of diversity pursuant to 28 U.S.C. § 1332.

8.      On or about January 13, 2022, Plaintiff suffered injuries as the direct and proximate result of the pressure cooker's lid being able to be rotated and opened while the pressure cooker was still under pressure, during the normal, directed use of the pressure cooker, allowing its scalding hot contents to be forcefully ejected from the pressure cooker and onto Plaintiff. The incident occurred as a result of the failure of the pressure cookers supposed "Built-In Safety Features," which purport to keep the consumer safe while using the pressure cooker. In addition, the incident occurred as the result of Defendant Tristar's failure to redesign the pressure cooker, despite the existence of economical, safer alternative designs.

## **DEFENDANT TRISTAR PRODUCTS, INC.**

9.      Defendant Tristar designs, manufactures, markets, imports, distributes, and sells a variety of consumer products including, inter alia, pressure cookers, air fryers, sprinklers, hoses, and TV antennas

10.     Defendant Tristar boasts that "[s]uperior innovation at affordable prices has enabled [them] to create #1 brands worldwide for more than 25 years" and that its products "solve everyday problems, helping to make life easier and more enjoyable for millions of consumers."

11.     Prior to April 30, 2018, Defendant Tristar was known as 'Tristar Products, Inc.", and was a Pennsylvania Corporation with its registered place of business at 2620 Westview Drive, Wyomissing, Berks County, Pennsylvania 19610, and its principal place of business located at 492 U.S. 46, Fairfield, New Jersey 07004.

12.     As of April 30, 2018, Defendant Tristar became "Tristar Innovative Products, Inc." and is now a Florida Corporation with its registered place of business at 1293 North University Drive, #322 City of Coral Springs, Broward County, Florida 33071, and its principal place of business located at 492 U.S. 46, Fairfield, New Jersey 07004.

13. As of June 12, 2020, Defendant Tristar changed its name back to "Tristar Products, Inc."., and changed its registered place of business to 2050 W. County Highway 30a, #M1-109 Santa Rosa Beach, Walton County, Florida 32459.

14. As of August 1, 2024, Defendant Tristar changed its registered place of business to 505 Maitland Avenue, Suite 1170 Altamonte Springs, FL 32701. Defendant therefore is a resident, citizen and is domiciled in the State of Florida for purposes of diversity pursuant to 28 U.S.C. § 1332.

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction over this case pursuant to diversity jurisdiction as prescribed by 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and there is complete diversity between the parties.

16. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant Tristar is a resident and citizen of this district.

17. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant has sufficient minimum contacts with the State of Florida and intentionally availed itself of the markets within Florida through the promotion, sale, marketing, and distribution of its products.

## FACTUAL BACKGROUND

18. Defendant Tristar is engaged in the business of designing, manufacturing, warranting, marketing, importing, distributing and selling the pressure cookers at issue in this litigation.

19. Defendant Tristar aggressively warrants, markets, advertises and sells its pressure cookers as "state of the art kitchen science," [2] allowing consumers to cook "wholesome, sit down, family-style meal[s] with just the push of a button;" [3] "in a fraction of the time" [4] as other kitchen appliances; and that "[t]here's no safer way to cook." [5]

20. To further propagate its message, Defendant Tristar has utilized numerous media outlets including, but not limited to, television infomercials, social media websites such as YouTube, third-party retailers, and professional chef endorsements. For example, the following can be found on Defendant Tristar's Power Pressure Cooker XL website[6] from "culinary expert" Eric Theiss, who is featured in many of Defendant Tristar's YouTube videos, as well as its television infomercial:

> "I have seriously never seen a cook tool so easy, so versatile, so affordable that anyone can make quality, delicious meals, perfectly cooked from the very first time! The Perfect Cooker is the one pot that does it all!"[7]

21. According to the Owner's Manual accompanying each individual unit sold, the pressure cookers purport to have "Built-In Safety Features," misleading the consumer into believing that the pressure cookers are reasonably safe for their normal, intended use. Said "Safety Features" include, but are not limited to, the following:

   a. SAFETY LID LOCK: The Lid tabs connect under the Base tabs to lock the Lid to the Base when fully closed.

   b. POSITIVE PRESSURE MECHANISM (FLOAT VALVE): When the pressure reaches a required point, the pressure lifts the Float Valve up, contacting the Locking Pin.

---

[2] https://www.youtube.com/watch?v=hN13IrMs_S4 at 1:34-1:35
[3] *Id*. at 9:04 - 9:08.
[4] *Id*. at 9:08 – 9:10.
[5] https://www.youtube.com/watch?v=kCESkfSSROk at 2:54
[6] http://www.powerpressurecooker.com/?gclid=Cj0KEQjw4cLKBRCZmNTvyovvj-4BEiQAl_sgQvo_7hhyOkL0DOfmJ0ZaW4G7brJ22YwsEEHAaros9zUaAqMb8P8HAQ
[7] http://www.powerpressurecooker.com/about.php

    c.  LID POSITIONING SENSOR: A magnetic sensor indicates whether the Lid is fully closed. The Unit will beep and display "LID" when the Lid is not locked or is not required for a preprogrammed setting.

    d.  LID INNER TRAY (GUARD): The Inner Lid prevents food from entering the Upper Lid and entering the Float Valve and Pressure Release Chambers.

    e.  ANTI-BLOCKAGE GUARD: Guards the underside of the Pressure Release Valve.

    f.  TWO-STEP SECURITY RESET FOR QUICK RELEASE: The Steam Release Switch needs to be slid once to release the steam and then let go to open the Lid. If there is steam/pressure coming out of the Pressure Release Valve or your hand is still holding the Steam Release Switch in the Open position, the Lid will not slide to open.

    g.  EXCESS PRESSURE RELEASE SYSTEM: The Pressure Release Valve is weighted, which maintains a pressure level and only allows the Unit to build pressure at a certain level. When the pressure is higher than the weight can handle, the steam is released until the pressure is less than the weight.

    h.  AUTOMATIC TEMPERATURE CONTROL: The temperature is regulated by the programming to maintain a consistent temperature.

    i.  PRESSURE CONTROLLER: The Inner Pot sits on a pressure plate. When there is too much pressure, the plate depresses and turns off the heater, which stops the pressure from increasing.

    j.  ELECTRICAL (CURRENT-TEMP) PROTECTION: There is a temperature sensor on the Base of the Unit. When the temperature rises above the preprogrammed setting, the heater shuts down and then fluctuates to allow the Unit to maintain the correct temperature.

    k.  CYCLE INDICATOR (LCD DISPLAY): The LCD display changes colors and a program countdown is shown.

    l.  ANTI-TAMPER FLOAT VALVE GUARD: A screen on the Lid covers the Float Valve, so it cannot be tampered with.

22.    In addition to the "Built-In Safety Features" listed in the manual, in Defendant Tristar's "Frequently Asked Questions" YouTube video,[8] Defendant Tristar states that lid of the pressure cookers "should only come off if there [is] no pressure inside.[9]" Specifically:

---

[8] https://www.youtube.com/watch?v=kCESkfSSROk (last accessed April 20, 2022).
[9] *Id.*

- "People worry that the lid might come off. It won't." (1:02)

- "The lid on the Power Pressure Cooker XL can only come off if there's no pressure left inside the pot. And remember, if there is pressure present inside the pot, the lid will stay securely closed so you don't have to worry." (1:02)

- "Once your meal is finished, the unit will depressurize and automatically stop cooking and switch to the Keep Warm mode. There's no safer way to cook." (2:54)

23. By reason of the forgoing acts or omissions, the above-named Plaintiff and/or their family purchased their pressure cooker with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that it was safe for its intended, foreseeable use of cooking.

24. Plaintiff used her pressure cooker for its intended purpose of preparing meals for herself and/or family and did so in a manner that was reasonable and foreseeable by Defendant Tristar.

25. However, the aforementioned pressure cooker was defectively designed and manufactured by Defendant Tristar in that it failed to properly function as to prevent the lid from being removed with normal force while the unit remained pressurized, despite the appearance that all the pressure had been released, during the ordinary, foreseeable and proper use of cooking food with the product; placing the Plaintiff and similar consumers in danger while using the Pressure Cookers.

26. Defendant Tristar's pressure cookers possess defects that make them unreasonably dangerous for their intended use by consumers because the lid can be rotated and opened while the unit remains pressurized.

27. Further, Defendant Tristar's representations about "safety" are not just misleading, they are flatly wrong and put innocent consumers like Plaintiff directly in harm's way.

28. Economic, safer alternative designs were available that could have prevented the Pressure Cooker's lid from being rotated and opened while pressurized. Examples of such designs include, but are not limited to, the following examples:

    a. Designing the Pressure Cooker with a longer locking pin that could be griped between user's thumb and the forefinger, in combination with changing the base unit locking lug ramp angle on the locking lug adjacent the locking pin from 45-degrees to 90-degrees;

    b. Designing a lid shield with fewer holes for steam passage, and with those holes positioned as far away as possible from the manual release and floating valves to reduce the likelihood of clogging; and,

    c. Designing the holes in the lid shield to direct any contents away from the valve.

29. Defendant Tristar knew or should have known that its pressure cookers possessed defects that pose a serious safety risk to Plaintiff and the public. Nevertheless, Defendant Tristar continues to ignore and/or conceal its knowledge of the pressure cookers' defects from the general public and continues to generate a substantial profit from the sale of its pressure cookers, demonstrating a callous, reckless, willful, depraved indifference to the health, safety and welfare of Plaintiff and consumers like her.

30. As a direct and proximate result of Defendant Tristar's intentional concealment of such defects, its failure to warn consumers of such defects, its negligent misrepresentations, its failure to remove a product with such defects from the stream of commerce, and its negligent design of such products, Plaintiff used an unreasonably dangerous Pressure Cooker, which resulted in significant and painful bodily injuries upon Plaintiff's simple removal of the lid of the Pressure Cooker.

31. Consequently, the Plaintiff in this case seeks damages resulting from the use of Defendant Tristar's pressure cooker as described above, which has caused the Plaintiff to suffer

from serious bodily injuries, medical expenses, physical pain, mental anguish, diminished enjoyment of life, and other damages.

**CLAIMS FOR RELIEF**

**COUNT I**
**STRICT LIABILITY**

32. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

33. At the time of Plaintiff's injuries, Defendant Tristar's pressure cookers were defective and unreasonably dangerous for use by foreseeable consumers, including Plaintiff.

34. Defendant Tristar's pressure cookers were in the same or substantially similar condition as when they left the possession of Defendant Tristar.

35. Plaintiff did not misuse or materially alter the pressure cooker.

36. The pressure cooker did not perform as safely as an ordinary consumer would have expected it to perform when used in a reasonably foreseeable way.

37. Further, a reasonable person would conclude that the possibility and serious of harm outweighs the burden or cost of making the pressure cookers safe. Specifically:

   a. The pressure cookers designed, manufactured, sold, and supplied by Defendant Tristar were defectively designed and placed into the stream of commerce in a defective and unreasonably dangerous condition for consumers;

   b. The seriousness of the potential burn injuries resulting from the product drastically outweighs any benefit that could be derived from its normal, intended use;

   c. Defendant Tristar failed to properly market, design, manufacture, distribute, supply, and sell the pressure cookers, despite having extensive knowledge that the aforementioned injuries could and did occur;

   d. Defendant Tristar failed to warn and place adequate warnings and instructions on the pressure cookers;

   e. Defendant Tristar failed to adequately test the pressure cookers; and

  f. Defendant Tristar failed to market an economically feasible alternative design, despite the existence of the aforementioned economical, safer alternatives, that could have prevented the Plaintiff' injuries and damages.

38. Defendant Tristar's actions and omissions were the direct and proximate cause of the Plaintiff's injuries and damages.

39. Defendant Tristar's conduct, as described above, was extreme and outrageous. Defendant Tristar risked the safety and well-being of the consumers and users of its pressure cookers, including the Plaintiff to this action, with the knowledge of the safety and efficacy problems and suppressed this knowledge from the public. Defendant Tristar made conscious decisions not to redesign, warn or inform the unsuspecting consuming public. Defendant Tristar's outrageous conduct warrants an award of punitive damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant for damages, as well as punitive damages according to proof, together with interest, costs of suit, and all such other relief as the Court deems proper. Plaintiff reserves the right to amend the complaint to seek punitive damages when evidence or facts supporting such allegations are discovered.

## COUNT II
## STRICT LIABILITY - DESIGN DEFECT

40. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

41. Defendant Tristar is the manufacturer, seller, distributor, marketer, and supplier of the subject pressure cooker, which was defectively and negligently designed.

42. Defendant Tristar failed to exercise reasonable care in designing, developing, manufacturing, inspecting, testing, packaging, selling, distributing, labeling, marketing, and promoting its pressure cookers, which were defective and presented an unreasonable risk of harm to consumers, such as the Plaintiff.

43. As a result, the subject pressure cookers, including Plaintiff's pressure cooker, contain defects in their design which render them unreasonably dangerous to consumers, such as the Plaintiff, when used as intended or as reasonably foreseeable to Defendant Tristar. The defect in the design allows consumers such as Plaintiff to open the lid while the unit remains pressurized, despite the appearance that all the pressure has been released from the unit, and causes an unreasonable increased risk of injury, including, but not limited to, first, second and third-degree scald burns.

44. Plaintiff in this case used her pressure cooker in a reasonably foreseeable manner and did so as substantially intended by Defendant Tristar.

45. The subject pressure cooker was not materially altered or modified after being manufactured by Defendant Tristar and before being used by Plaintiff.

46. The design defects allowing the lid to open while the unit was still pressurized directly rendered the pressure cookers defective and were the direct and proximate result of Defendant Tristar's negligence and failure to use reasonable care in designing, testing, manufacturing, and promoting the pressure cookers.

47. As a direct and proximate result of Defendant Tristar's negligent design of its pressure cookers, the Plaintiff in this case suffered injuries and damages described herein.

48. Despite the fact that Defendant Tristar knew or should have known that the Plaintiff and consumers like her were able to remove the lid while the pressure cookers were still pressurized, Defendant Tristar continued to market its pressure cookers to the general public (and continues to do so).

49. Defendant Tristar's conduct, as described above, was extreme and outrageous. Defendant Tristar risked the safety and well-being of the consumers and users of its pressure

cookers, including the Plaintiff to this action, with the knowledge of the safety and efficacy problems and suppressed this knowledge from the public. Defendant Tristar made conscious decisions not to redesign, despite the existence of economically feasible, safer alternative designs, warn or inform the unsuspecting consuming public. Defendant Tristar's outrageous conduct warrants an award of punitive damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant for damages, as well as punitive damages according to proof, together with interest, costs of suit, and all such other relief as the Court deems proper. Plaintiff reserves the right to amend the complaint to seek punitive damages when evidence or facts supporting such allegations are discovered.

## COUNT III
## STRICT LIABILITY - FAILURE TO WARN

50.　Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully herein.

51.　At the time in which the pressure cooker was purchased, up through the time Plaintiff was injured, Defendant Tristar knew or had reason to know that its pressure cookers were dangerous and created an unreasonable risk of harm to consumers.

52.　Defendant Tristar had a duty to exercise reasonable care to warn consumers of the dangerous conditions or the facts that made its pressure cookers likely to be dangerous.

53.　As a direct and proximate result of Defendant Tristar's failure to warn of the dangers of its pressure cookers, the Plaintiff in this case suffered injuries and damages described herein.

54.　Despite the fact that Defendant Tristar knew or should have known that consumers were able to remove the lid while the pressure cookers were still pressurized, Defendant Tristar continued to market its pressure cookers to the general public (and continues to do so).

55.　Defendant Tristar's conduct, as described above, was extreme and outrageous. Defendant Tristar risked the safety and well-being of the consumers and users of its pressure cookers, including the Plaintiff to this action, with the knowledge of the safety and efficacy problems and suppressed this knowledge from the public. Defendant Tristar made conscious decisions not to redesign, warn or inform the unsuspecting consuming public. Defendant Tristar's outrageous conduct warrants an award of punitive damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant for damages, as well as punitive damages according to proof, together with interest, costs of suit, and all such other relief as the Court deems proper. Plaintiff reserves the right to amend the complaint to seek punitive damages when evidence or facts supporting such allegations are discovered.

## DEAMNDS FOR JURY TRIAL

Plaintiff demands that all issues of fact of this case be tried to a properly impaneled jury to the extent permitted under the law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against the Defendant Tristar for damages, including punitive damages if applicable, as well as all costs of this action, to the full extent of the law, whether arising under the common law and/or statutory law, including:

a. judgment for Plaintiff and against Defendant Tristar;

b. damages to compensate Plaintiff for their injuries, economic losses and pain and suffering sustained as a result of the use of the Defendant Tristar's pressure cooker;

c. pre and post judgment interest at the lawful rate;

d. that she be allowed to amend her complaint to allege punitive damages, according to proof;

e. a trial by jury on all issues of the case; and

    f.  for any other relief as this Court may deem equitable and just, or that may be available under the law of another forum to the extent the law of another forum is applied, including but not limited to all reliefs prayed for in this Complaint and in the foregoing Prayer for Relief.

Respectfully submitted,

**JOHNSON BECKER, PLLC**

Date: <u>December 13, 2025</u>

<u>*/s/ Lisa A. Gorshe, Esq.*</u>
Lisa A. Gorshe, Esq. (FL #122180)
444 Cedar Street, Suite 1800
Saint Paul, MN 55101
(612) 436-1852 / (612) 436-1801 (fax)
lgorshe@johnsonbecker.com

***Attorneys for Plaintiff***